UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ONESOURCE FACILITY SERVICES,
INC.,

    Plaintiff,

v.                                          CASE NO. 2:05-cv-00525-TAW-DNF

ROBERT G. MOSBACH, SHERRI L.
FUCHS, and GULFSHORE FACILITY
SERVICES, INC., a Florida
corporation,

    Defendants.
_____/

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION IN LIMINE #1 AND MOTION IN LIMINE #3**

    Defendants Robert G. Mosbach ("Mosbach"), Sherri L. Fuchs ("Fuchs"), and Gulfshore Services, Inc. ("Gulfshore"), submit the following Memorandum of Law in Opposition to Plaintiff's Motion in Limine #1 and Motion in Limine #3:

**I.**    Relevant Background.

    In Count I of its Amended Complaint, OneSource alleges that the individual Defendants, Mosbach and Fuchs, acting in concert with corporate Defendant, Gulfshore, violated the Confidentiality and Non-Solicitation Agreements ("Restrictive Agreements") which Mosbach and Fuchs entered into separately while employed by OneSource Facility Services, Inc. ("OneSource"). It is undisputed that the subject Restrictive Agreements do not prohibit Mosbach and Fuchs from competing with OneSource after termination of their employment. In fact, the Restrictive Agreements expressly recognize that departing employees are permitted to "remain in the same business as OneSource" if they so desire. The Restrictive Agreements do not preclude

Mosbach and Fuchs from doing business with any former customer or client of OneSource. Rather, they merely restricted Mosbach and Fuchs from <u>soliciting</u> current customers or active customer prospects of OneSource for 18 months after termination of their employment (the "Restrictive Period"). In Count I of the Amended Complaint, OneSource alleges that the Restrictive Covenants were valid, that Defendants breached them, and that their breach was a legal cause of loss suffered by OneSource. OneSource seeks not only injunctive relief, but also to recover damages under Count I. Specifically, OneSource seeks to recover as damages the profits lost during the 18 month Restrictive Period. (Doc. 28-1, ¶ 125).

In Count III of the Amended Complaint, OneSource seeks injunctive relief and damages from Defendants for tortiously interfering with OneSource's business relationships with its customers during a period prior to and after the termination of Mosbach and Fuchs' employment with OneSource. It should be noted that OneSource does not contend that Mosbach and Fuchs' departure from OneSource's employment violated any agreement or was otherwise wrongful. Rather, the alleged conduct giving rise to OneSource's claims for breach of the Restrictive Agreements (Count I) and tortious interference with business relations (Count III) is Defendants' alleged wrongful solicitation of or tortious interference with OneSource customers.

It is also undisputed that the OneSource customers within District 137 (the geographic area that is the subject of Plaintiff's claim) had a right to unilaterally cancel the services of OneSource. A few customers within District 137 had written contracts with OneSource which required thirty days notice of written cancellation. Most customers, however, had no written contract. All OneSource customers had the right to

discontinue doing business with OneSource for <u>any</u> <u>reason</u>.  The customers in District 137 consist primarily of affluent gated community and country club accounts.  The customer base in District 137 is unusually demanding.  Customers expect their cleaning services vendor to meet unusually high standards of immaculate service and to be immediately responsive to customer inquiries and complaints.  In its Motions in Limine #1 and #3, OneSource seeks to preclude Defendants from offering evidence tending to prove that OneSource failed to meet customers' expectations after Mosbach and Fuchs left the company.  This evidence is highly relevant because it is precisely the reason the customers in District 137 discontinued OneSource's services.  OneSource was simply unable and/or unprepared to meet its customers' needs after Mosbach left!

      The evidence will show that in early 2004, OneSource adopted a corporate management philosophy and instituted new management practices that threatened to have a significant detrimental effect on the successful operations of District 137.  The new corporate management philosophy resulted in OneSource cutting and eventually terminating all of the administrative staff in District 137.  The elimination of Fuchs' position in October 2004 threatened to cripple District 137's ability to properly service customers.  To make matters worse, the OneSource corporate office mandated that Mosbach (as the manager of District 137) reduce labor costs and institute a freeze on employee raises below what was required to properly service the high-end country club accounts that were the District's primary customer base.  During the same time frame, OneSource unilaterally limited the supplies that District 137 needed to properly service accounts.

Despite the overwhelming obstacles imposed by OneSource's mandates and implementation of the new management practices, Mosbach was largely successful in delivering the same high quality services to OneSource customers within District 137 for a brief period of time. However, by the fall of the 2005, Mosbach realized that he could no longer work under the new management policies and practices and still deliver satisfactory cleaning services to customers in District 137 with the same degree of integrity and continuity as in the past. Mosbach resigned his employment with OneSource in October 2005 after giving appropriate notice. During his notice period, Mosbach cooperated fully with OneSource and worked diligently toward a successful transition of his duties.

As prima facie elements of their claim for breach of the Restrictive Covenants (Count I) and tortious interference with business relations (Count III), OneSource must not only prove by a preponderance of the evidence that its customers were wrongfully solicited by Defendants or that Defendants tortiously interfered with OneSource customers, but also that the prohibited solicitation was the <u>legal</u> <u>cause</u> of the damages claimed by OneSource. <u>Florida Standard Jury Instruction</u>, MI 12.1 Breach of Contract – Existence of Contract Admitted (Terms Unambiguous) (2006). <u>Florida Standard Jury Instruction</u>, MI 7.2 Interference with Contract Terminable at Will or With Prospective Business Relations. It is apparent from Plaintiff's proposed Exhibit #91 that OneSource is claiming damages in the form of lost profits for the entire 18 month Restrictive Period. Assuming, *arguendo*, Defendants' breached the Restrictive Agreements through improper solicitation or tortiously interfered with OneSource's business relationships in order to prevail on its claims for damages, OneSource must still prove that <u>but</u> <u>for</u>

Defendants' breach or tortious interference, OneSource would have met customers' needs such that those customers would have elected to continue doing business with OneSource during the entire 18-month term of the Restrictive Period.  In other words, OneSource must prove with reasonable certainty that its alleged damages (i.e., the Company's lost profits from the lost customer relationships)  were profits that it was reasonably certain to enjoy <u>but</u> <u>for</u> the Defendants' alleged improper solicitation or wrongful interference.  <u>Florida Standard Jury Instruction</u>, MI 12.1; <u>Florida Standard Jury Instruction</u>, MI 7.2.

In its Motion in Limine # 1 and #3, OneSource seeks to preclude Defendants from introducing highly relevant evidence relating to overall customer dissatisfaction and the reasons OneSource was unable to deliver satisfactory service to customers in District 137 during the Restrictive Period -- evidence that is clearly relevant to breach of the Restrictive Agreements or tortious interference, proximate cause, and damages under Counts I and III.

The evidence that OneSource seeks to exclude on relevancy grounds is evidence related to the nature and extent of OneSource's failure to maintain customer relationships or to develop or implement a successful transition plan after the departure of its key employee, Mosbach.[1]  Evidence tending to prove OneSource's failure to meet customer expectations within District 137 during the Restrictive Period and its failure to

---

[1] The evidence will show that after Mosbach's departure, OneSource promoted Connie Bires to the position of acting District Manager.  Ms. Bires had no experience in running the District, and OneSource provided her with no training or support.  Ms. Bires was not familiar with any of the country club accounts or how to manage them.  The quality of service immediately declined.  There was no communication with customers.  Customers complained, and their complaints went unaddressed.  Many customers discontinued doing business with OneSource.  Some, but certainly not all of the lost accounts sought to do business with Gulfshore.

implement a successful transition plan after Mosbach's resignation is both logically and legally relevant for the reasons outlined below.

## II. **EVIDENCE AND TESTIMONY FROM OR REGARDING FORMER ONESOURCE CUSTOMERS WITHIN DISTRICT 137 DURING THE RESTRICTIVE TIME PERIOD IS BOTH RELEVANT AND ADMISSIBLE.**

The testimony and evidence at issue, which relates to the decline in the quality and number of OneSource's relationships with customers in District 137 after Mosbach's departure, is relevant to Defendants' alleged breach of the Restrictive Agreements or tortious interference with customer relationships, to the existence of legal causation, and to damages from any alleged breach or interference. In support of Plaintiff's Motions in Limine #1 and #3, OneSource states that the testimony and evidence it seeks to keep out is irrelevant to any claim or defense (Doc. No. 80 at 1-2).

A.  Plaintiff's assertion that the subject evidence is irrelevant to any defense is patently untrue.

Defendants' Tenth Affirmative Defense to Plaintiff's Amended Complaint largely relies upon such information, and appears as follows:

> TENTH AFFIRMATIVE DEFENSE
>
> Defendants affirmatively allege that to the extent that Plaintiff has lost any business, such loss was caused by Plaintiff's own acts or omissions, or unilateral decisions of the accounts or customers to voluntarily leave Plaintiff's relationship and not as a result of any solicitation by Defendants.
>
> (Doc. No. 29 at 10)

In support of the Defendants' argument that OneSource lost business because of its own acts or omissions, Defendants should be permitted to present testimony and evidence concerning the chaos that reigned within District 137 during the Restrictive Period. To limit Defendants' evidence on OneSource's inability to successfully do business within District 137 to only those situations involving customers that ultimately

contracted with Defendants would prevent the jury from considering evidence that shows the prevalence and gravity of the mistakes made by OneSource during the Restrictive Period.  The evidence which OneSource seeks to preclude is critical to a full and fair determination of whether, but for Defendants' alleged solicitation or interference, OneSource would have been able to serve these customers and that these customers would have elected to continue to do business with OneSource for the entire Restrictive Period.

It is anticipated that OneSource, in attempting to prove its case, will present testimony showing that after Mosbach left OneSource, there was a mass exodus of OneSource customers who are now serviced by Gulfshore.  Very little, if any, direct evidence was produced in discovery that might lend itself to assisting OneSource in proving that Defendants Mosbach and/or Fuchs did, in fact, breach the Restrictive Agreements by soliciting the customers.  As such, it is anticipated that OneSource will seek to prove the existence of such a breach through the inference that [if "A"] the exodus of many of OneSource's customers coincided with Mosbach's departure, [and "B"] that some of those clients that left OneSource are now doing business with the company for which Mosbach now works, [then "C"] such a result must have been because Defendants solicited their business.  To grant Plaintiff's Motions in Limine #1 and #3 would wrongfully prohibit Defendants from countering this theory.

Defendants anticipate that the testimony and evidence at trial will establish, *inter alia,* the following:  (1) that none of the customers that have discontinued the services of OneSource during the Restrictive Period have done so because of any direct or indirect solicitation of their business or unlawful interference by Defendants; (2) that many of the

customers who cancelled the services of OneSource during the Restrictive Period never engaged the services of Defendants (they simply took their business elsewhere because of OneSource's failure to meet their expectations and needs after Mosbach's departure); and (3) that customers who cancelled the services of OneSource during the relevant time period did so for a variety of reasons unrelated to any prohibited solicitation or wrongful interference by Defendants, including (a) dissatisfaction with the level of service provided by OneSource during the Restrictive Period, (b) unresolved billing issues with OneSource during the Restrictive Period, (c) inadequate or nonexistent communication with OneSource during the Restrictive Period, and (d) their long history and great comfort level with Mosbach such that they initiated contact or sought to continue doing business with him, without regard to the name of the entity employing him.

With respect to item (1) above, Defendants are confident that Gulfshore's customers will testify that the reason they left OneSource was not the result of improper solicitation or interference. While this testimony is sufficient, in and of itself, to find against OneSource on Counts I and III, Defendants must have the opportunity to provide evidence and testimony in support of items (2) and (3) above, in order to present a *complete* and plausible alternative to Plaintiff's theory of breach and respond to Plaintiff's arguments that the Gulfshore customers are biased.

B.  <u>Plaintiff's assertion that the subject evidence is irrelevant to any claim is patently untrue.</u>

Each and every one of Plaintiff's claims are premised upon Plaintiff's assertion that the mass exodus of its customers occurred as a result of Mosbach's and/or Fuchs' alleged breach of the Restrictive Agreements via improper solicitation of or unjustified

interference with OneSource's customers. OneSource has burden of proving breach of the Restrictive Agreement(s) or unlawful interference and also to prove legal cause between such breach/interference and the damages alleged. As outlined above, the thrust of the testimony and evidence OneSource seeks to exclude goes directly to refute the existence of a such a breach and also goes directly to refute that such a breach, if existent, is the legal cause of the damages alleged.

III. **Exclusion of Evidence via Federal Rule of Evidence 403 is appropriate only in extraordinary circumstances, none of which are present in this case.**

The admission of evidence or testimony at trial from or regarding former OneSource customers who did not enter into business relationships with Gulfshore or the admission of evidence regarding OneSource's lack of an adequate transition plan is clearly probative, and its admission is not unfairly prejudicial to Plaintiff. Advisory Committee Notes to Federal Rule of Evidence 403, state in relevant part, that "'unfair prejudice'…means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." The ability of the Defendants to admit the evidence and testimony in dispute would not, in any way, encourage a decision on an improper and/or emotional basis. To the contrary, to disallow the evidence would encourage the jury to decide the case on an improper, illogical, incomplete or emotional basis.

In <u>Collins v. Seaboard Coast Line Railroad Company</u>, 675 F.2d 1185, (11th Cir. 1982), the Eleventh Circuit Court of Appeals adopted the following rule stated in <u>Weinstein's Evidence</u>,

> Since the trial judge is granted such a powerful tool by Rule 403, he must take special care to use it sparingly….If there is doubt about the existence of unfair prejudice, confusion of issues, misleading, undue delay or waste of time, it is generally better practice to admit the evidence taking

>necessary precautions by way of contemporaneous instructions to the jury followed by admonition in the charge….

Id. (quoting Vol. I, Weinstein & Burger, Weinstein's Evidence, s 403(01).

The Eleventh Circuit has often reiterated this principle. (See, e.g., Ebanks v. Great Lakes Dredge & Dock Co., 688 F.2d 716, 722-723 (11th Cir. 1982) (quoting the same language as Collins, supra, and stating "[t]his is in accord with the rule applicable in this circuit"); and U.S. v. King, 713 F.2d 627, 631 (11th Cir. 1983) (holding that Rule 403 "is an extraordinary remedy which should be used sparingly.")  "[T]his admonition comport[s] with the fact that the federal rules favor admission of evidence over exclusion if the evidence has *any* probative value…." King, 713 F.2d at 631 (emphasis added) (citing U.S. v. Guerrero, 667 F.2d 862, 867 (10th Cir. 1981); U.S. v. Day, 591 F.2d 861, 879 (D.C. Cir. 1979).  Jonasson v. Lutheran Child and Family Services, 115 F.3d 436, 440 (7th Cir. 1997).  Further, "the more essential the evidence, the greater its probative value, and the less likely that a trial court should order the evidence excluded." Id. (citations omitted).

In Ramos v. Liberty Mutual Insurance Company, 615 F.2d 334 (5th Cir. 1980), the Fifth Circuit, in precedent binding upon this court, reversed the trial court's decision to exclude evidence related to an accident similar to the accident that was the subject of the lawsuit, stating that "evidence of similar accidents might be relevant to…causation. [Further], [i]n the context of this case's factual disputes…[such evidence] could be relevant…most especially [to] causation." Id. at 338-339.  Continuing in its explanation for reversal, the Court stated that "[o]f course, "unfair prejudice" as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party.  Virtually all evidence is prejudicial or it isn't material.  The prejudice must be "unfair." Id. at 340.

It is interesting that OneSource urges the court to grant its motion because "the jury will *assume* an impermissible and unsubstantial connection between OneSource's alleged deficiencies and the actual reason its customers chose to leave." (Doc. No. 80 at 7) (emphasis added). The Defendants propose to admit such testimony precisely to *eliminate* the jury's necessity to *assume* any connection.

OneSource proposes the narrow admission of evidence on customer relationships in District 137 in order to "infer" a causal connection between Mosbach's and/or Fuchs' alleged breach of the Restrictive Agreements or tortious interference and the legal cause of their alleged damages. On the other hand, Defendants urge the Court to allow the admission of direct testimony from customers who left OneSource during the Restrictive Period and evidence of OneSource's failed transaction plan for the sole purpose of eliminating the need for the jury to "assume" or "infer" anything. By admitting evidence and testimony concerning the status of District 137 during the Restrictive Period, the jury will have the ability to hear, directly from the customers that made the decision to leave OneSource during the Restrictive Period and the resounding reason for their exodus -- OneSource's inability or refusal to meet customers' needs and expectations.

**IV.   Conclusion.**

Motions in Limine are an appropriate vehicle "to eliminate from further consideration evidentiary submissions that **clearly ought not be presented** to the jury because they **clearly would be inadmissible for any purpose**." Jonasson v. Lutheran Child and Family Services, 115 F.3d 436 (7th Cir. 1997) (emphasis added). Under either a contract or tort theory, Plaintiff bears the burden of proving that Mosbach and/or Fuchs breached the Restrictive Agreement(s) or improperly interfered with OneSource's

relationships with customers and that such breach or interference was the legal cause of Plaintiff's damages. The testimony and evidence that OneSource seeks to exclude in Motions in Limine #1 and #3 are relevant to these essential elements of OneSource's claims. The evidence at issue is also relevant to essential elements of Defendants' Tenth Affirmative Defense, namely that the damages OneSource claims were the result of Plaintiff's own ineptitude during the Restrictive Period.

For these and all of the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motions in Limine #1 and #3.

Respectfully submitted,

HENDERSON FRANKLIN STARNES & HOLT, P.A.

s/Vicki L. Sproat
Vicki L. Sproat
Florida Bar No. 0304751
Post Office Box 280
Fort Myers, FL 33902-0280
(239) 344-1100 Telephone
(239) 344-1200 Facsimile
E-mail: vicki.sproat @henlaw.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 13, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Thomas Mead Santoro, Esq. and David E. Block, Esq.

s/Vicki L. Sproat
Vicki L. Sproat