IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

| | |
|---|---|
| **ONESOURCE FACILITY SERVICES, INC.**    ) | |
| )  | |
| **Plaintiff,**    ) | |
| )  | |
| v.    )  | Civil Action No. 2:05cv525-TAW-DNF |
| )  | Judge Thomas A. Wiseman, Jr. |
| **ROBERT G. MOSBACH, SHERRI L. FUCHS,**    ) | |
| **and GULFSHORE FACILITY SERVICES, INC.**    ) | |
| **a Florida Corporation,**    ) | |
| )  | |
| **Defendants.**    ) | |

### MEMORANDUM

**I.      INTRODUCTION**

Plaintiff/Counter-Defendant OneSource ("OneSource") filed its Complaint on November 7, 2005 seeking enforcement of a restrictive covenant, injunctive relief and monetary damages for breach of contract, tortious interference with contractual and business relationships, and violation of Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.  (Doc. No. 1.)  Defendants/Counter-Plaintiffs Robert G. Mosbach ("Mosbach") and Sherri L. Fuchs ("Fuchs") filed their counterclaims against OneSource on December 6, 2005 ("Counterclaim") (Doc. No. 19).  With permission of the Court, OneSource filed an Amended Complaint on February 13, 2006 (Doc. No 28) to which Defendants filed their Answer and Affirmative Defenses on March 1, 2006 (Doc. No. 29).

On July 10, 2006 OneSource filed a Motion for Summary Judgment as to Count II of the Counterclaim brought by Mosbach[1] against OneSource alleging breach of an employment agreement, as well as his Second, Third, Fourth, Sixth and Seventh Affirmative Defenses to the extent that they are based on the same allegations in his counterclaim (Doc. No. 47).  In response, Mosbach filed a Motion to Strike Portions of the Affidavit of Michael Bindeman ("Motion to Strike") (Doc. No. 54), which was submitted by OneSource in support of its Motion for Summary Judgment, as well as a memorandum in opposition to the Motion for Summary

---

[1]Plaintiff's motion does not address Count I of the Counterclaim brought by Fuchs against OneSource alleging OneSource violated the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. ("FLSA"), by failing to properly compensate her for work weeks in which she worked in excess of forty hours (Doc. No. 19, at 2).

1

Judgment (Doc. No. 56). For the reasons set forth below, the Court will DENY Mosbach's Motion to Strike the Bindeman Affidavit as moot (Doc. No. 54) and GRANT OneSource's Motion for Summary Judgment as to Count II of the Counterclaim and the Seventh Affirmative Defenses in so far as they relate to claims that OneSource unlawfully cancelled the 2004 and 2005 Management Incentive Compensation Plan ("MIC Plan") bonuses and his 2005 salary raise (Doc. No. 47), but DENY summary judgment as to Mosbach's claim that OneSource breached an oral contract as to his 2003 salary raise.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Mosbach began working as the District Manager for OneSource in April 1999 when OneSource acquired Bayside Cleaning Services, a company formerly owned and operated by Mosbach. In 2001, OneSource formally offered Mosbach the position of Vice President of Operations Florida where he would be responsible for the operations in Naples, Tampa, Orlando and Jacksonville, Florida. The offer was extended to Mosbach in a letter agreement dated June 5, 2001 (the "Letter Agreement"). (Doc. No. 19, Ex. 6.)

The Letter Agreement set forth the specifics of the promotion including: the start date of June 6, 2001; the base annual salary of $75,000; his eligibility for employee benefits plans including a 20% Management Incentive Compensation Plan ("MIC Plan") bonus in accordance with OneSource's MIC Plan; and an auto allowance. Mosbach signed the Letter Agreement accepting the offer and occupied the position of Vice President of Operations until he left OneSource in late 2005. (Doc. No. 29, ¶11.)

### A.     Salary Raises

In the Letter Agreement, OneSource agreed it would pay Mosbach an initial base salary of $75,000 per year. There was no mention of salary raises in the Letter Agreement, yet effective April 1, 2002, Mosbach received a $10,000 raise increasing his base salary to $85,000. According to Mosbach, at some point after the initial raise Mr. Kevin Keegan ("Keegan"), a former division president of One Source, promised Mosbach he would receive an additional $10,000 raise for 2003 that would take effect on April 1, 2003 and increase his base salary to $95,000. (Doc. No. 55 at 4.) However, Mosbach only received a 3.5% or $3,230.00 raise in 2003, not the $10,000 he claims he was promised. (Doc. No. 48, ¶ 31.) Subsequently in 2004 and 2005, Mosbach again received raises of 3% and 3.5%, increasing his base salary to $91,318.00 and then to $94,514.00. However, it is undisputed that Mosbach did not receive the $10,000 raise he claims was

promised by Mr. Keegan.  (Doc. No. 55, at 5.)

      **B.**      **Bonuses Under the MIC Plan**

During fiscal years ending 2001 through 2004, OneSource's compensation package for management personnel consisted of a base salary and an MIC Plan bonus.  (Doc. No. 55, at 3.)  The MIC Plan was an incentive plan that provided the possibility of additional compensation to Vice Presidents who achieved their Personal Performance Operating Income Budget for the fiscal year.  In addition to the Letter Agreement, Mosbach was also given a copy of the MIC Plan summary in effect the year he was hired.  (Doc. 48-5.)  The terms of the MIC Plan for the year at issue were contained in a document titled *Fiscal Year 2004 Management Incentive Compensation Plan – Vice President, Operations – Summary Document* ("MIC Summary Document").  (Doc. No 55-5.)  Mosbach acknowledged receipt of, and agreed with the Terms and Conditions of the MIC Summary Document by signing it on September 11, 2003.  (Doc. No. 55-5, at 14.)

The amount of bonus paid out under the MIC Plan for a given year, if any, was based on an established formula that took into account the actual operational income, budgeted operational income and salary for the time period March 31, 2003 through March 31, 2004.  (Doc. No. 55, at 3.)  The MIC Summary Document stated that the senior management of OneSource had "the sole authority and discretion to make all decisions . . . [and] [a]ll such decisions will be final, conclusive and binding upon all parties."  (Doc. 55-5, at 10.)  The Summary Document also provided that the "[r]esults are subject to a review by an independent audit firm and as such may require adjustments," but that "[u]pon audit completion and sign-off, actual payment will be made approximately sixty (60) days after the fiscal year ends."  (Doc. No. 55-5, at 10.)  However, it also stated that "[t]he company may terminate, amend or modify, the MIC Plan in any respect, at any time" and "participants will not have any vested right to the MIC payment except as otherwise provided herein."  (*Id.*)

Mosbach received an MIC bonus for every year between 2001 and its cancellation in 2004.  (Doc. No. 48, at 6.)  According to Mosbach, during the time period at issue he reported directly to the then Division President, Thomas Persinger ("Persinger").  (Doc. No. 55, at 2-3.)  Persinger reviewed the underlying financial data on which Mosbach's MIC Bonus was to be calculated in a meeting with Mosbach sometime after March 31, 2004.  (Doc. No. 55, at 3.)  Based on the financial data regarding Mosbach's 2004 work performance and

the formula in the MIC Summary Document, he was told he qualified for a 2004 MIC bonus in the range of $22,000.  (Doc. No. 55-3, at 18.)  However, OneSource "cancelled" all MIC bonuses for 2004 before any payments were made.  (Doc. No. 55, at 4.)

According to OneSource, the decision to cancel the MIC Plan for fiscal year 2004 was based on the company's financial results and condition.  (Doc. No. 48, at 6.)  Specifically, at the end of the 2004 fiscal year, the company's results were audited by its independent auditors and it was determined that the company needed to strengthen its reserves for its Worker's Compensation self-insurance program.  (Doc. No. 48, at ¶ 20; Doc. No 48-5, at 9.)  Mosbach's supervisor, Mr. Persinger, was informed of the decision to cancel the payments under the 2004 MIC Plan in a phone call from Ms. Cheryl Jones, Chief Executive Officer of OneSource.  Mr. Persinger was instructed to relay the information to the Vice Presidents and others in the field.  (Doc. No. 48, at ¶ 23.)  Mr. Persinger then called an emergency conference call with the four Vice Presidents, including Mosbach, wherein he informed them that he had bad news and that as a result of the condition of the company financials and the results of the audit, OneSource was forced to cancel the payments under the MIC Plan for fiscal year 2004.  (Doc. No. 55-3, at 15.)  No Vice President received an MIC bonus for that year and the MIC Plan was never re-instituted by OneSource.  (Doc. No. 48, at ¶ 25.)

On September 23, 2005, Mosbach informed OneSource that he was resigning his employment effective October 7, 2005.  OneSource claims that once Mosbach left, he created a new company, Gulfshore Facility Service, and began taking customers away from OneSource.  According to OneSource, these acts violated the Confidentiality and Non-Solicitation Agreement Mosbach signed on March 20, 2001 thereby giving rise to the present lawsuit.  OneSource filed its initial Complaint on November 7, 2005 and on February 13, 2006, with the Court's permission, filed an Amended Complaint.

Defendants Mosbach and Fuchs filed their Counterclaims on December 6, 2005.  Count I of the Counterclaim alleges that throughout Fuchs' employment, OneSource repeatedly and willfully violated the FLSA by failing to pay Fuchs overtime.  Count II of the Counterclaim alleges that OneSource breached the terms of Mosbach's employment contract and also breached the implied covenant of good faith and fair dealing by cancelling the MIC Plan and by failing to pay Mosbach raises to which he was entitled.  According to OneSource, Mosbach did not have a contractual right to receive bonuses under the MIC Plan, nor did the alleged oral promise of a salary raise create an enforceable contractual right to a raise.  Accordingly,

OneSource claims it is entitled to judgment as a matter of law.

In support of this contention and its Motion for Summary Judgment, OneSource has filed a Statement of Undisputed Facts along with excerpts of deposition testimony, answers to interrogatories, the Letter Agreement, the signed MIC Plan and the "Statement Under Penalty of Perjury of Michael Bindeman" ("Bindeman Affidavit"). Mosbach has filed a Motion to Strike portions of the Bindeman Affidavit arguing that Bindeman is not qualified to testify as to the issues, that the Affidavit sets forth inadmissible evidence and/or fails to include certain admissible evidence; and that he has improperly rendered opinions in the Affidavit. (Doc. No. 54.) Mosbach's Motion to Strike and OneSource's Motion for Summary Judgment are now before the Court.

### III.   PENDING MOTIONS

#### A.   Mosbach's Motion to Strike Portions of the Affidavit of Michael Bindeman

The Court will first address the Motion to Strike. Mosbach has moved to strike Paragraphs 9 through 13[2] of the Bindeman Affidavit submitted by OneSource in support of its Motion for Summary Judgment on Count II of the Counterclaim pursuant to Rule 56(e) of the Federal Rules of Civil Procedure.

Rule 56(e) requires that affidavits submitted in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Paragraphs 9 and 10 of the Affidavit simply restate selected provisions of the 2004 MIC Summary Document, while paragraphs 11 through 13 set forth factual assertions regarding the independent audit of OneSource's financial condition and how the audit results influenced OneSource in its decision to cancel payments under the MIC Plan for the 2004 fiscal year. (Doc. No. 48-5, ¶¶ 11-13.) Mosbach objects to OneSource's use of the Bindeman Affidavit to bring before the Court evidence concerning the alleged legal justification for the cancellation of the 2004 MIC bonus payments and the MIC Plan. (*Id.*)

The Court has reviewed paragraphs 9 through 13, which contain for the most part restatements of

---

[2]Although Mosbach's Motion to Strike ultimately requests the Court enter an Order striking paragraphs 9 through 13 of the Bindeman Affidavit, the Court notes that in at least one place the Motion to Strike does not refer to paragraph 13, referencing only paragraphs 9 through 12. (Doc. No. 54, at 5.) However, based on the prayer for relief and the otherwise consistent reference to paragraphs 9 through 13, as well as OneSource's Response addressing paragraphs 9 through 13, the Court will consider Mosbach's request as to paragraphs 9 through 13.

selected portions of the MIC Summary Document and statements regarding OneSource's financial condition and decision to cancel the payments under the 2004 MIC Document Summary, in addition to conclusory statements that OneSource's "decision was both allowed by the terms of the Plan and required by the company's audit results." (Doc. No. 48-5, at ¶ 13.)  The Court disregards the conclusory statements in paragraph 13.  However, as all other statements in paragraphs 9 through 13 of the Bindeman Affidavit do not alter the Court's ultimate conclusion that Mosbach does not have a contractual right to receive a bonus under the MIC Plan, it DENIES as moot Mosbach's Motion to Strike.  (Doc. No. 54.)

   **B.**   **OneSource's Motion for Summary Judgment as to Count II of the Counterclaim**

    **1.**   **Standard of Review**

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." *Branche v. Airtan Airways, Inc.*, 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  In determining whether summary judgment is appropriate for either party herein, the Court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the facts in favor of the party opposing the motion. *See Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999).

    **2.**   **Discussion**

OneSource's Motion for Summary Judgment deals only with Count II of the Counterclaim and five affirmative defenses OneSource contends are based on Mosbach's allegations in his counterclaim.  In Count II of the Counterclaim, Mosbach alleges that OneSource breached its employment agreement with Mosbach as well as the implied covenant of good faith and fair dealing by: (1) cancelling the 2004 and 2005 MIC bonus;

and (2) cancelling the 2003 and 2005 annual raises, all of which he alleges he was entitled to receive.[3] (Doc. No. 19.) According to OneSource, Mosbach did not have a contractual right to receive payments under OneSource's MIC Plan, nor was he entitled to a $10,000 annual salary raise in 2003 based on a verbal remark by Mr. Keegan, a former OneSource official, that Mosbach would get a raise of about $10,000. (Doc. No. 49, at 5.) In response, Mosbach contends that there are disputed issues of material fact in regards to both the bonus payments under the 2004 MIC Plan Summary and the $10,000.00 raise he was promised and the Motion for Summary judgment should therefore be denied. The Court will consider each of the arguments in turn.

      a.    *Whether Mosbach Was Contractually Entitled to Receive Bonuses Under the MIC Plan.*

OneSource argues it is entitled to summary judgment as to Mosbach's claims that he was entitled to bonuses under the MIC Plan because the MIC Summary Document, which contained the terms of the MIC Plan for the 2004 fiscal year, did not create any contractual obligations toward Mosbach. (Doc. No. 49, at 3.) In response, Mosbach contends that the MIC Summary Document for 2004 is clearly an enforceable contract between Mosbach and OneSource under the fundamental rules of contract construction and OneSource breached this contract when it cancelled the 2004 MIC bonus after it was earned, but before it was paid. (Doc. No. 56, at 3-5.) Although Mosbach's counterclaims allege OneSource "breached the express terms of their employment agreement" by cancelling the MIC bonus payments for 2004 and 2005, Mosbach's opposition to OneSource's motion only addresses his claim for the 2004 MIC bonus. (Doc. No. 56, at 2-7.)

The parties apparently agree that the "employment agreement"[4] at issue is the 2004 MIC Summary Document, which set forth the terms and conditions of the MIC Plan for 2004. (Doc. No. 49 & Doc. No. 56, at 3.) There is no dispute that OneSource did not re-institute the MIC Plan or pay any MIC bonuses after the

---

[3]Although ¶ 21(c) of the counterclaim alleges OneSource breached the express terms of their employment agreement by cancelling his 2004 annual raise, Mosbach testified during his deposition that he received a raise in 2004 and his actual claim under ¶ 21(c) was for a $10,000 raise promised for 2003, not 2004. (Doc. No. 55-2, at 19-20.)

[4]In Count II of his counterclaim, Mosbach refers to the Letter Agreement, not the MIC Plan Summary, as the document that "obligated OneSource to pay Mosbach a base salary plus an annual 20% Management Incentive Compensation bonus." (Doc. No. 19, at ¶ 16.) Mosbach also identifies the Letter Agreement as the document which describes in part, "the express terms of Mosbach's employment agreement." (Doc. No. 19, at ¶ 17.) However, both parties specifically refer to the MIC Summary Document as the document at issue in Mosbach's counterclaims regarding OneSource's cancellation of any MIC bonuses.

MIC Plan was cancelled in 2004. Moreover, Mosbach concedes that he was informed of the cancellation of the MIC Plan in 2004 and he has presented no facts or evidence to support the allegation that he was somehow entitled to an MIC bonus after the 2004 fiscal year. Thus, there is no colorable basis for Mosbach's claim that he was entitled to an MIC bonus for fiscal year 2005 and OneSource is entitled to summary judgment as to any allegations that OneSource breached its employment agreement by cancelling the MIC Plan and bonus for 2005.

The remaining issue is whether, as Mosbach argues, the MIC Summary Document is an enforceable contract providing that Mosbach was entitled to a bonus under OneSource's MIC Plan for fiscal year 2004. If, as OneSource contends, the MIC Summary Document was nothing more than an employee benefit policy, which may have created a unilateral expectation on the part of Mosbach, but was not a mutual promise necessary to create a binding contract, then Mosbach's claims for payment of an MIC bonus for the 2004 fiscal year must fail and OneSource is entitled to summary judgment as to this claim. On the other hand, if, as Mosbach contends, the MIC Summary Document created vested rights in participants, including Mosbach, to receive an MIC bonus for 2004, which was cancelled by OneSource prior to payment then OneSource's motion for summary judgment should be denied. The Court will now consider each party's individual arguments.

In support of its motion, OneSource first points to the reluctance of Florida courts, both federal and state, to find that employment policies, plans or manuals rise to the level of an enforceable employment contract. *See Walton v. Health Care District of Palm Beach County, Florida*, 862 So.2d 852, 855-56 (Fla. 4th DCA 2003), *LaRocca v. Xerox Corp.*, 587F. Supp 1002, 1003 (S.D. Fla. 1984). According to OneSource, for the MIC Plan Summary to be considered a binding employment contract there must be explicit language stating that it constitutes a binding contract and a careful review of the MIC Plan Summary clearly shows there is no such language contained therein. Because there is no such language in the MIC Summary Document, OneSource contends that there was only a "mere unilateral expectation, rather than the explicit mutual promises necessary to create a binding contractual term." *Bryant v. Shands Technical Hospital*, 479 So.2d 165, 168 (Fla. 1st DCA 1985*).*

In further support of its position that the MIC Summary Document did not give rise to enforceable contract rights, OneSource cites to the specific terms of the MIC Summary Document stating that:

"[p]articipants will not have any vested right to the MIC payment"; the plan was to be "administered by the Senior Management of OneSource, which has the sole authority or discretion to make all decisions hereunder"; "results are subject to review by an independent audit firm and as such may require adjustments"; and "the Company may terminate, amend or modify the MIC plan in any respect, at any time" (Doc. No. 55-5). OneSource asserts that even if the MIC Summary Document constituted a "promise" to pay a bonus to Mosbach, the fact that OneSource retained the right to amend, alter or terminate the MIC plan at any time rendered any promise illusory and unenforceable. *See Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1311-12 (11th Cir. 1998); *Rosenberg v. Lawrence, f/k/a Rosenberg*, 541 So.2d 1204, 1206 (Fla. 3rd DCA 1988) (citations omitted) (where one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract, there is no valid contract and neither side may be bound).

In response, Mosbach claims that the MIC Summary Document was in fact an employment contract that outlined the terms of bonus compensation paid to OneSource Vice Presidents. Mosbach asserts that the statements of the MIC Summary Document upon which OneSource relies are taken out of context and do not support the conclusion that the MIC Summary Document is not an enforceable contract.[5] (Doc. No. 56.) According to Mosbach, the MIC Plan Document was "a contract outlining the terms of bonus compensation to be paid to OneSource Vice Presidents, including Mosbach, for fiscal year 2004" and OneSource breached that agreement by cancelling his 2004 MIC payment two days before the bonus payment was due to be paid. (*Id.*) Mosbach devotes much of his response to reviewing the provisions of the MIC Summary Document under the Florida rules of contract construction[6] in an attempt to support his claim that he is entitled to the

---

[5]According to Mosbach, regardless of the terms of the MIC Summary Document, under Florida law "sole discretion under a contract does not permit a party to make discretionary decisions that violate the implied covenant of good faith and fair dealing." *Ernie Haire Ford, Inc., v. Ford Motor Co.*, 260 F.3d 1285 (11th Cir. 2001). However, Mosbach's reliance on this proposition is misplaced. Florida law does not recognize a claim for breach of good faith and fair dealing unless an enforceable contract exists. *See Beach Street Bikes, Inc. v. Bourgett's Bike Works, Inc.*, 900 So.2d 697, 700 (Fla. 5th DCA 2005) (citations omitted) (recognizing that the duty of good faith does not attache until the plaintiff can establish of the term of the contract that the defendant was obligated to perform.) As discussed herein, based on the facts and allegations presented by the parties and viewing the evidence in the light most favorable to Mosbach, the non-movant, the Court finds that the MIC Summary Document does not rise to the level of an enforceable contract and OneSource is entitled to judgment as a matter of law as to this claim. Accordingly, Mosbach's allegations of a breach of an implied duty of good faith and fair dealing must also be dismissed.

[6]Mosbach cites to the Florida rules for contract construction as follows:
(1)  A contract will not be deemed void for uncertainty unless the indefiniteness reaches a point where construction becomes futile;

9

2004 MIC bonus payment. Yet, no where in his counterclaim or his response to OneSource's motion does Mosbach specifically set forth any facts or point to any definite or certain terms within the MIC Summary Document to support a finding that it was an explicit mutual agreement that required OneSource to pay Mosbach an MIC bonus for 2004.

Mosbach argues that there is a valid contract between him and his employer to pay him a bonus for 2004, but the Court is not persuaded by his argument. It is "well established Florida law that policy statements in employee manuals do not give rise to enforceable contract rights in Florida unless they contain specific language which expresses the parties' mutual agreement that the manual constitutes a separate employment contract." *See Walton*, 862 So.2d at 855-56, *Quaker Oats Co. v. Jewell*, 818 So.2d 574, 576-78 (Fla. 5th DCA 2002); *McConnell v. Eastern Air Lines, Inc.*, 499 So.2d 68 (Fla. 3rd DCA 1986); *Bryant*, 479 So.2d at 168; *LaRocca*, 587F. Supp at 1003. The MIC Summary Document for 2004 provided to Mosbach and other Vice Presidents of Operations advised them that the MIC bonus would be based on annualized performance and calculated according to a specific formula considering specific performance elements such as achieving and exceeding Personal Performance Operating Income Budget, as well as Cash Requirement goals. (Doc. No. 55-5.) Other sections of the MIC Summary Document set forth terms and conditions for a participant's eligibility and the year-end payout including a provision that the year-end payment would be on or before May 31, 2004.

Taken together, the MIC Summary Document and Mosbach's meeting with Persinger where he was informed that he qualified for an MIC bonus in the range of $22,000 may well have instilled in him an expectation that he would receive an MIC bonus as long as he was actively employed by OneSource through the day the MIC check was paid. (Doc. No. 55-5, at 10). However, it is clear from the terms of the MIC Summary Document and the facts surrounding the cancellation that there was no contractual duty on the part

---

(2) Ambiguities are to be construed against the drafter;
(3) The conduct of the parties in the course of their dealings shall be considered in determining the meaning of the written contract where the terms are in doubt;
(4) The goals of the parties shall be considered by the Court and to this end the Court shall place itself in the position of the parties when they entered into the contract;
(5) The contract interpretation should be consistent with reason, probability, and practical aspects of the transaction; and
(6) The contract should be considered as a whole rather than by itself.

*Veniard v. NB Holdings Corp.*, 2000 WL 33988085 (MD Fla. Aug. 8, 2000).

10

of OneSource to pay Mosbach or any of its other Vice Presidents bonuses under the 2004 MIC Summary Document.  *See Tohma v. Spalding & Evenflo Companies, Inc.*, 724 So.2d 693, 694 (Fla. 2nd DCA 1999) (recognizing that the law of Florida is that an employee's mere expectations, however reasonable, are insufficient to create a binding term of employment); *Parrish v. General Motors Corp.*, 137 So.2d 255, 257 (Fla. 2nd DCA 1962) (finding that based on wording of bonus plan that "[t]he Bonus and Salary Committee shall have the right from time to time to modify or suspend this plan," the plan was gratuitous and lacked key elements of a contract).  Moreover, the Court agrees with OneSource that even if the MIC Summary Document could be construed to contain a "promise" to pay MIC bonuses for fiscal year 2004, it was clearly an illusory promise unenforceable as a matter of law.  *See Rosenberg*, 541 So.2d at 1206.

Based on a careful review of the record and viewing the facts in the light most favorable to Mosbach, the Court finds no language in the MIC Summary Document or facts to support the contention that the document was meant to be a part of Mosbach's employment contract.  This, coupled with the provisions of the MIC Summary Document wherein OneSource retained authority and discretion to amend, terminate or modify the MIC plan at any time and provided for an audit of the results, make it clear that OneSource had the right to cancel the 2004 MIC bonus payments and the MIC plan at any time.  Further, the Court finds that the MIC Summary Document was not a contract between Mosbach and OneSource.  Accordingly, OneSource is entitled to judgment as a matter of law as to Mosbach's claims that he was entitled to receive an MIC bonus for the 2004 fiscal year.

      b. *Whether the Oral Promise of a Salary Raise Created An Enforceable Contractual Right to an Annual Raise.*

In addition to his claims against OneSource for unpaid MIC bonus payments, Mosbach also claims that OneSource breached an oral contract to pay Mosbach a $10,000 raise in 2003[7] and 2005. (Doc. No. 19, ¶¶21(c)-(d).  According to Mosbach, sometime in April or May of 2002, Division President Keegan gave him a $10,000 raise and promised that he would receive another $10,000 increase in his salary effective April 1, 2003.  (Doc. No. 55-2, at 19-20.)  However, he only received a 3.5% or $3,230.00 raise in 2003.  (Doc. No. 48, ¶ 31.)  Subsequently in 2004 and 2005, Mosbach again received raises of 3% and 3.5%, increasing his

---

[7]As set forth above, the allegations in paragraph 21(c) pertain to 2003, not 2004.  (Doc. No. 55-2, at 20.)

base salary to $91,318.00 and then to $94,514.00.  (Doc. No. 55, at 5.)

OneSource argues that Mosbach's allegations regarding an oral promise of a salary raise did not create a contractual right to said raise and OneSource is entitled to judgment as a matter of law.  Specifically, OneSource contends that the alleged statement by Keegan in 2002 did not contain all of the essential elements to be considered an offer under Florida law, and at best, the statement was indefinite and ambiguous.  (Doc. No. 49, at 5.)  In addition, OneSource argues that even if Keegan did promise Mosbach a raise in 2002, which he cannot prove, any such promise as a promise to pay a raise in the future and is not enforceable.  Moreover, according to Mosbach's own testimony, wherein he admits that he received a salary raise in 2005 and he did not know o f any promise for a specific amount or raise for that year, there is absolutely no basis for his counterclaim with regards to payment of a raise in 2005.  (Doc. No. 55-2, at 23.)  Accordingly, OneSource seeks summary judgment as to Mosbach's claims that OneSource breached an oral contract to pay him a raise in 2003 and 2005.  (Doc. No. 49, at 5-6.)

In response, Mosbach simply points to the record and argues that he has raised issues of material fact that should be submitted to the jury on the issue of breach of an oral contract to pay Mosbach a $10,000 raise effective April 1, 2003.  (Doc. No. 56, at 7.)  According to Mosbach, Keegan verbally promised to give him a $10,000 raise in April 2003, which would put him in line with the other Vice Presidents at OneSource, but Keegan was fired before the date the raise was to be paid.  Thereafter, in 2003, Mosbach received a "company approved raise" of only 3.5% or approximately $3,230.  (Doc. No. 55-2, at 22.)  Mosbach contends that the facts establish there was an oral contract created between him and his superior Keegan, and OneSource breached that contract when it failed to pay the 2003 raise in its entirety.

As discussed above, there is no question that Mosbach received an annual raise in both 2003 and 2005 and that the amount in both years was less than the $10,000 he was allegedly promised.  The only question before the Court  is whether there was an enforceable oral agreement between OneSource, through Keegan's promise as its division president, and Mosbach to pay him a $10,000 annual raise and if so, whether OneSource breached that contract in by failing to pay him the entire amount in both 2003 and 2005.  Despite the allegations of his counterclaim, Mosbach now concedes that he was not promised a raise of any kind for 2005.  (Doc. No. 55-2, at 22.)  Further, there are no facts or evidence in the record to indicate that Keegan's 2002 promise of a $10,000 raise for fiscal year 2003 was intended to apply to Mosbach's subsequent years

of employment. Accordingly, the Court finds that there was no agreement, oral or otherwise, between OneSource and Mosbach with regards to the raise Mosbach received in 2005 and OneSource is entitled to summary judgment with regards to this claim.

With regards to Mosbach's claims as to the 2003 annual raise there is clearly an issue of fact as to whether OneSource breached that agreement by paying him less than the $10,000 promised. OneSource does not dispute Mosbach's testimony that as of 2002 he was making at least $10,000 less than the other Vice Presidents at OneSource or that as a result, Keegan, as OneSource's division president and Mosbach's superior, promised him that he would receive another $10,000 raise in 2003 to put his salary in line with his co-workers. (Doc. No. 55-2, at 19). Although Mosbach admits he has no documents to substantiate his claim, he has clearly set forth enough facts to establish an oral offer and OneSource has presented no evidence to contradict his claim.

OneSource contends that Keegan's promise was only a "verbal remark" insufficient to constitute an offer under Florida law and any alleged contract is too indefinite to be enforced. The Court disagrees. *See Perry v. Cosgrove*, 464 So.2d 664, 666-67 (Fla. 2d DCA 1985) (finding that plaintiff established the existence of a contract based on allegations that superior informed him that he would be receiving a raise of $5,000 in March 1983, which was deferred until May 1983, but was not paid at the time of his termination in May, 1983 and jury may properly determine the exact terms of the oral contract). After considering all inferences drawn from the underlying facts in the light most favorable to Mosbach, the Court finds that there are issues of material fact as to whether OneSource breached an oral agreement to pay Mosbach the $10,000 raise for 2003 and OneSource's motion for summary judgment as to this claim must be denied.

      c. *Whether the Second, Third, Fourth, Sixth and Seventh Affirmative Defenses Relate to Mosbach's Claim Under the MIC Plan and Are Properly Subject to OneSource's Motion for Summary Judgment.*

Finally, OneSource contends, for the same reasons presented in support of dismissing Count II of the Counterclaim, that it is entitled to summary judgment dismissing the Second, Third, Fourth, Sixth and Seventh Affirmative Defenses. OneSource does not specifically address any of the individual affirmative defenses or set forth any argument as to how each of these affirmative defenses relate to Mosbach's different claims in Count II. Rather, OneSource simply quotes the Affirmative Defenses in question and argues that, to the extent they are based upon the same allegations raised in Count II of the Counterclaim, OneSource is entitled to

summary judgment dismissing them as well. (Doc. No. 49, at 9.) The affirmative defenses at issue include:

> Second: Defendants affirmatively allege that Plaintiff's prior material breach of the Agreements at issue have allowed both Mosbach and Fuchs to treat any obligations thereunder as fully discharged.
>
> Third: Defendants affirmatively allege that Plaintiff is equitably estopped to [*sic*] enforce the provisions of the Agreements at issue.
>
> Fourth: Defendants affirmatively allege that the restrictive covenants at issue are void for lack or failure of consideration.
>
> Sixth: Defendants affirmatively allege that enforcement of the restrictive covenants at issue is barred by the equitable doctrines of unclean hands and laches.
>
> Seventh: Defendants affirmatively allege that because Plaintiff breached contracts of employment with Mosbach and Fuchs and have caused Mosbach and Fuchs damage, such damage suffered by Mosbach and Fuchs should be set off from any claim of Plaintiff, or, alternatively, should be recovered by Defendants, Mosbach and Fuchs, by a plea of recoupment.

(Doc. No. 29, at 9.)

In response, Mosbach argues that "it is obvious that the Second, Third, Fourth and Sixth Affirmative Defenses are not necessarily related to Count II of the Counterclaim which is an action against OneSource for breach of an agreement to pay Mosbach compensation." (Doc. No. 56, at 8.) However, Mosbach concedes that the Seventh Affirmative Defense does relate to the counterclaim in that it states that OneSource breached Mosbach's employment contract and Mosbach should be allowed to offset OneSource's claim with his own damages.

After a careful review of the Affirmative Defenses cited by OneSource in its motion and Mosbach's allegations in Count II of the Counterclaim, the Court finds that only the Seventh Affirmative Defense is clearly related to the claims in Count II. Accordingly, the Court finds that the Seventh Affirmative Defense should be dismissed, but only as it relates to Mosbach's claims that OneSource breached its employment agreement with Mosbach by cancelling the 2004 and 2005 MIC bonus payments and his 2005 annual raise. To the extent the Seventh Affirmative Defense can be construed to relate to Mosbach's claim that OneSource breached an oral promise of a salary raise in 2003 or to any claims brought by Defendant Fuchs, the Court finds that it is not subject to summary judgment.

**C.     Conclusion**

For the reasons set forth above and for good cause shown, the Court hereby DENIES Mosbach's

Motion to Strike the Bindeman Affidavit as moot (Doc. No. 54).  In addition, the Court GRANTS OneSource's Motion for Summary Judgment as to Count II of the Counterclaim and the Seventh Affirmative Defense in so far as they relate to claims that OneSource unlawfully cancelled the 2004 and 2005 MIC Plan bonuses and Mosbach's 2005 annual raise (Doc. No. 47), but DENIES summary judgment as to Mosbach's claim that OneSource breached an oral contract as to his annual salary raise in 2003.

_____
Thomas A. Wiseman, Jr.
Senior United States District Judge
Sitting by Designation in the Middle District of Florida